Corrigan, C.J.
In these consolidated cases, this Court once again faces whether the plain language of § 7 of the governmental tort liability act, MCL 691.1407, permits a trespass-nuisance exception to governmental immunity. Because the Legislature’s *679 definition of the word “state” is clear and unambiguous, we hold that it does not. In so holding, we overrule Hadfield v Oakland Co Drain Comm’r, 430 Mich 139; 422 NW2d 205 (1988), and other cases to the contrary. However, because we are mindful of the effect our holding will have on the administration of justice, we conclude that limiting our holding to prospective application is appropriate.
i
FACTUAL BACKGROUND AND PROCEDURAL POSTURE
A
POHUTSKI v ALLEN PARK
The city of Allen Park experienced a “ten year storm” on February 17 and 18, 1998. As a result of the high volume of rainfall, raw sewage from the city’s sewer system backed up through plaintiffs’ floor drains and into their basements. Plaintiffs filed a class action against the city of Allen Park for trespass, nuisance, trespass-nuisance, negligence, and unconstitutional taking in April 1998. Plaintiffs thereafter sought summary disposition of their trespass-nuisance claim under MCR 2.116(C)(10). Plaintiffs argued that defendant was hable as a matter of law under the doctrine of trespass-nuisance and that Hadfield barred governmental immunity as a defense. Defendant opposed the motion, arguing that a claim of trespass-nuisance required a showing of causation, and that it could not be held strictly hable solely on the basis of its ownership of the sewer system.
In a brief opinion rendered from the bench, Wayne Circuit Judge Edward Thomas granted plaintiffs’ motion for partial summary disposition, holding that *680 defendant was strictly liable under the “trespass-nuisance” exception to governmental immunity. The Court of Appeals denied defendant’s application for interlocutory review. Unpublished order, entered May 23, 2000 (Docket No. 222238).
B
JONES v FARMINGTON HILLS
On August 6, 1998, a “one hundred year storm” dropped approximately 4.6 inches of rain in less than six hours on the city of Farmington Hills, causing flooding throughout the community. As a result, raw sewage from defendants’ sewer system traveled up through plaintiffs’ floor drains and into their basements. Thirty-seven plaintiffs filed suit against the city of Farmington Hills, alleging claims of trespass, nuisance, trespass-nuisance, negligence, and unconstitutional taking. Plaintiffs moved for summary disposition of their trespass-nuisance claim, arguing that defendant was liable as a matter of law under Hod-field. Defendant opposed the motion and filed a counter motion for summary disposition, arguing that trespass-nuisance is not a strict liability tort and that plaintiffs had failed to establish causation or improper construction, engineering, or maintenance of its sewer system.
Oakland Circuit Judge Jessica Cooper denied defendants’ motion and granted plaintiffs’ motion for summary disposition of their trespass-nuisance claim. Judge Cooper held that trespass-nuisance was a recognized exception to the governmental immunity statute, MCL 691.1407, and that no genuine issues of material fact existed regarding the exception’s three *681 elements: (1) a condition (nuisance or trespass), (2) cause (physical intrusion), and (3) causation or control (by government).
After the trial court denied reconsideration, defendant applied for leave to appeal in the Court of Appeals. The Court of Appeals granted the application and stayed the pending trial date. Plaintiffs then filed an emergency motion for rehearing. The Court of Appeals granted plaintiffs’ motion, vacated its earlier order, and denied leave to appeal. Unpublished order, entered September 29, 2000 (Docket No. 227657).
n
STANDARD OF REVIEW
This Court reviews a trial court’s decision to grant summary disposition de novo. Wickens v Oakwood Healthcare System, 465 Mich 53, 59; 631 NW2d 686 (2001). Questions of statutory interpretation are also reviewed de novo. In re MCI Telecommunications, 460 Mich 396, 413; 596 NW2d 164 (1999).
m
THE GOVERNMENTAL TORT LIABILITY ACT
From the time of Michigan’s statehood, this Court’s jurisprudence has recognized that the state, as sovereign, is immune from suit unless it consents, and that any relinquishment of sovereign immunity must, be strictly interpreted. Manion v State Hwy Comm’r, 303 Mich 1, 19; 5 NW2d 527 (1942). Sovereign immunity exists in Michigan because the state created the courts and so is not subject to them. Ross v Consum *682 ers Power Co (On Rehearing), 420 Mich 567, 598; 363 NW2d 641 (1984).
It is important to distinguish between “sovereign immunity” and “governmental immunity”:
“[SJovereign” immunity and “governmental” immunity are not synonymous. True, they have been over the years used interchangeably in decisions, but a delineation may be helpful. Sovereign immunity is a specific term limited in its application to the State and to the departments, commissions, boards, institutions, and instrumentalities of the State. The reason is the State is the only sovereignty in our system of government, except as the States delegated part of their implicit sovereignty to the Federal government.
. . . Over the years, by judicial construction, this “sovereign” immunity has been transmogrified into “governmental” immunity and made applicable to the “inferior” divisions of government, i.e., townships, school districts, villages, cities, and counties, but with an important distinction. These subdivisions of government enjoyed the immunity only when engaged in “governmental” as distinguished from “proprietary” functions. [Myers v Genesee Auditor, 375 Mich 1, 6, 8-9; 133 NW2d 190 (1965) (opinion of O’Hara, J.) (emphasis in original).]
In Williams v Detroit, 364 Mich 231, 250; 111 NW2d 1 (1961), Justice Edwards, joined by Justices T. M. Kavanagh, Smith, and Souris, wrote: “From this date forward the judicial doctrine of governmental immunity from ordinary torts no longer exists in Michigan. In this case, we overrule preceding court-made law to the contrary.” Justice Black, in his concurring opinion, stated that governmental immunity would be abolished only for municipalities, not the state and its subdivisions. Id. at 278.
*683 As we noted in Ross, supra at 605, the Legislature enacted the governmental tort liability act in 1964 in reaction to Williams’ abolition of common-law governmental immunity for municipalities, and in anticipation of a similar abrogation of immunity for counties, townships, and villages. The act “was intended to provide uniform liability and immunity to both state and local governmental agencies” when involved in a governmental function. Id. at 614. While there is agreement regarding the statute’s intent, there has been much disagreement regarding its meaning.
When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature’s intent as expressed in the words of the statute. DiBenedetto v West Shore Hosp, 461 Mich 394, 402; 605 NW2d 300 (2000); Massey v Mandell, 462 Mich 375, 379-380; 614 NW2d 70 (2000). We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature’s intent only if the statutory language is ambiguous. Turner v Auto Club Ins Ass’n, 448 Mich 22, 27; 528 NW2d 681 (1995). Where the language is unambiguous, “we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.” DiBenedetto, supra at 402. Similarly, courts may not speculate about an unstated purpose where the unambiguous text plainly reflects the intent of the Legislature. See Lansing v Lansing Twp, 356 Mich 641, 649-650; 97 NW2d 804 (1959).
When parsing a statute, we presume every word is used for a purpose. As far as possible, we give effect to every clause and sentence. “The Court may not *684 assume that the Legislature inadvertently made use of one word or phrase instead of another.” Robinson v Detroit, 462 Mich 439, 459; 613 NW2d 307 (2000). Similarly, we should take care to avoid a construction that renders any part of the statute surplusage or nugatory. In re MCI, supra at 414.
With these principles of statutory construction in mind, we turn to the language of MCL 691.1407(1), which provides:
Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [Emphasis added.]
“Governmental agency” and “state” are not synonymous, nor are they interchangeable. Rather, each is precisely defined in the statute:
(b) “Political subdivision” means a municipal corporation, county, county road commission, school district, community college district, port district, metropolitan district, or transportation authority or a combination of 2 or more of these when acting jointly; a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, or council of a political subdivision.
(c) "State” means the state of Michigan and its agencies, departments, commissions, courts, boards, councils, and statutorily created task forces and includes every public university and college of the state, whether established as a constitutional corporation or otherwise.
(d) “Governmental agency” means the state or a political subdivision. [MCL 691.1401.]
*685 Under a plain reading of the statute, then, the first sentence of § 7 applies to both municipal corporations and the state, while the second sentence applies only to the state. Despite the Legislature’s clear and unambiguous use of the word “state” in the second sentence, this Court has struggled with its meaning.
A

HADFIELD v OAKLAND CO DRAIN COMM’R

In Hadfield, we considered whether the trespass-nuisance exception to governmental immunity, as a common-law tort-based exception, survived the governmental tort liability act. We concluded that recognition of the historic trespass-nuisance exception was required by the language of § 7. In so holding, we strayed from the plain language of the statute, despite our claim that we “moved carefully to impose judicial construction only upon those terms in the statute that required interpretation.” Id. at 173.
Hadfield correctly interpreted the first sentence of § 7 because it focused on the plain language chosen by the Legislature:
Taken alone, the first sentence of § 7 does support a narrow interpretation of the act, to preclude recognition of any nuisance exception. The Legislature’s use of the word “tort” to describe the liability from which governmental agencies are to be held immune exemplifies the breadth of tire intended immunity. There is no doubt that nuisance is a tort and that liability for nuisance would be within the scope of statutory governmental immunity as expressed in the first sentence of § 7. [Id. at 147.]
Hadfield went astray, however, in interpreting the second sentence of § 7. Ignoring the second sen- *686 fence’s express application only to the “state,” the Hadfield Court held that “the second sentence of § 7 retains preexisting governmental immunity law except where provided otherwise in the act” and concluded that it required “a continuation of the nuisance exception as formulated prior to the enactment of the governmental immunity act in 1964, as amended by 1970 PA 155.” Id. at 147, 149 (emphasis added).
B

LIv FELDT

This Court reaffirmed Hadfield’s erroneous interpretation of the second sentence of § 7 in Li v Feldt (After Remand), 434 Mich 584, 592-594; 456 NW2d 55 (1990). Justice Griffin, in his opinion concurring in part and dissenting in part, pointed out what Had-field’s plurality and Li’s majority missed: “[t]he significance of the Legislature’s use of [the terms] ‘governmental agencies’ in the first sentence of § 7 and ‘state’ in the second . . . ’’Li, supra at 598-599. Justice Griffin reasoned:
A literal reading of the second sentence of § 7 seems, at most, to require an historical analysis of the state’s common-law immunity. The significance of the Legislature’s use of “governmental agencies” in the first sentence and the “state” in the second sentence is underscored by the definitions expressly given those terms in the act. “Governmental agency” is defined as “the state, political subdivisions, and municipal corporations.” The “state,” on the other hand, is defined as “the state of Michigan and its agencies, departments, [and] commissions . . . .” The terms are not interchangeable. The statutory provision prohibiting modification or restriction of immunity is specifically applied to the “state,” a term which does not embrace municipalities and *687 other forms of lower government. Definitions supplied by the Legislature in the statute are binding on the judiciary. Thus, assuming arguendo that the second sentence of § 7 requires an historical analysis, it should be applied to the “state” and not other “governmental agencies.” [Id. at 598-600.]
He continued:
The underlying premise of the Hadfield plurality opinion appears to be that the Legislature’s intent to make uniform the immunity of all levels of government requires that the historical analysis purportedly required by § 7 applies to all levels of government, despite the express limitation of the purported historical analysis to “the state.”
Although the act’s title declares its purpose is “to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments,” the uniformity of immunity intended by the Legislature does not necessarily include both governmental and nongovernmental functions. The act’s title qualifies the uniformity purpose by providing that the Legislature sought to make uniform the liability of all government “when engaged in the exercise or discharge of a governmental function . . . .” Simply because the Legislature claimed immunity on behalf of all levels of government “when engaged in the exercise or discharge of a governmental function” does not necessarily compel the conclusion that the state has no immunity when not engaged in the exercise or discharge of a governmental function. Indeed, the governmental tort liability act was “ ‘[d]rafted under the apparent assumption that the state and its agencies enjoyed a total sovereign immunity from tort liability ....’” Thus, the legislative intent underlying the second sentence of § 7 could merely have been to “affirm” the state’s preexisting absolute sovereign immunity, rather than to codify common-law exceptions to governmental immunity. Strict uniformity of immunity among all levels of government is not clearly mandated by § 7. [Id. at 600-601 (citation omitted; emphasis in original).]
*688 Justice Griffin worried that the historical approach adopted by the Hadfield plurality and reaffirmed by Li would “leave [] ajar the door to additional immunity exceptions that cannot be fairly culled from the language of § 7.” Id. at 602. He noted that nothing in the plain language of § 7 indicated a legislative intent to create a nuisance exception to governmental immunity, and concluded:
In my opinion, the fundamental purposes of the act were to restore immunity to municipalities, grant immunity to all levels of government when engaged in the exercise or discharge of a governmental function, and prevent judicial abrogation of governmental and sovereign immunity. The second sentence of § 7 was merely intended to prevent further erosion of the state’s common-law immunity, rather than preserve any common-law exceptions to governmental immunity. Under this analysis, unless the activity of a municipality falls within one of the five narrowly drawn statutory exceptions, the only question remaining in these cases is whether the activity is a “governmental function,” as defined by the Legislature. [Id. at 605 (emphasis in original).]
We agree with Justice Griffin’s analysis and adopt it today. We hold that while the first sentence of § 7 applies to both municipalities and the state, the clear and unambiguous language of the second sentence of § 7 applies only to the state, as defined in the statute.[1]
*689 c
THE TRESPASS-NUISANCE EXCEPTION
Because these cases involve cities, the second sentence of § 7 does not apply; any trespass-nuisance exception must therefore come from the first section of § 7. The first sentence provides:
Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. [MCL 691.1407(1).]
The parties agree that the operation of a sewage system is a governmental function. Thus, under the terms of the statute, municipal corporations are immune from tort liability except as otherwise provided in the act.
The act sets forth five statutory exceptions to governmental immunity: the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; and the governmental hospital exception, MCL 691.1407(4). In determining if the statutory exceptions permit a trespass-nuisance exception, we are guided by the principle expressed in Nawrocki v Macomb Co Rd Comm, 463 Mich 143, 158; 615 NW2d 702 (2000): “There is one basic principle that must guide our decision today: the immunity conferred upon governmental agencies is broad, and the statutory exceptions thereto are to be narrowly construed.” (Emphasis in original.)
With this principle in mind, we hold that the plain language of the governmental tort liability act does *690 not contain a trespass-nuisance exception to governmental immunity. Trespass-nuisance simply is not one of the five exceptions to immunity set forth in the governmental tort liability act. As stated above, we are bound by the clear and unambiguous statutory text; we lack constitutional authority to impose on the people of this state our individual policy preferences regarding the availability of lawsuits arising from the operation of a sewage system. We must “seek to faithfully construe and apply those stated public policy choices made by the Legislature” in drafting the governmental tort liability act. Nawrocki, supra at 151. We are mindful that, because immunity necessarily implies that a “wrong” has occurred, some harm caused by a governmental agency may lack a remedy. Id. at 157. Although governmental agencies have many duties regarding the services they provide to the public, a breach of those duties is compensable under the statute only if it falls within one of the statutorily created exceptions.
IV
TITLE-OBJECT CLAUSE
Plaintiffs argue that if the second sentence of § 7 applies only to the state and not to all governmental agencies, it violates the Title-Object Clause, Const 1963, art 4, § 24. We reject this argument.
We note at the outset that “all possible presumptions should be afforded to find constitutionality.” Advisory Opinion re Constitutionality of 1972 PA 294, 389 Mich 441, 464; 208 NW2d 469 (1973). Const 1963, art 4, § 24 provides in pertinent part:
*691 No law shall embrace more than one object, which shall be expressed in its title.
This constitutional provision requires that (1) a law must not embrace more than one object, and (2) the object of the law must be expressed in its title. Livonia v Dep’t of Social Services, 423 Mich 466, 496; 378 NW2d 402 (1985). This constitutional limitation ensures that legislators and the public receive proper notice of legislative content and prevents deceit and subterfuge. Advisory Opinion, supra at 465. The goal of the clause is notice, not restriction of legislation.
The “object” of a law is defined as its general purpose or aim. Local No 1644 v Oakwood Hosp Corp, 367 Mich 79, 91; 116 NW2d 314 (1962). The “one object” provision must be construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated. Kuhn v Dep’t of Treasury, 384 Mich 378, 387-388; 183 NW2d 796 (1971). We should not invalidate legislation simply because it contains more than one means of attaining its primary object; “[h]owever, if the act contains ‘subjects diverse in their nature, and having no necessary connection,’ ” it violates the Title-Object Clause. Livonia, supra at 499. The act may include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object. Advisory Opinion, supra at 465. The statute “may authorize the doing of all things which are in furtherance of the general purpose of the Act without violating the ‘one object’ limitation of art 4, § 24.” Kuhn, supra at 388. Finally, the constitutional requirement is not that the title refer to every detail of the act; rather, “ [i]t is sufficient that ‘the act centers to one main general object or purpose which the title comprehensively *692 declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose . . . Livonia, supra at 501 (citations omitted).
The title of the governmental tort liability act provides:
An act to make uniform the liability of municipal corporations, political subdivisions, and the state, its agencies and departments, officers, employees, and volunteers thereof, and members of certain boards, councils, and task forces when engaged in the exercise or discharge of a governmental function, for injuries to property and persons; to define and limit this liability; to define and limit the liability of the state when engaged in a proprietary function; to authorize the purchase of liability insurance to protect against loss arising out of this liability; to provide for defending certain claims made against public officers and paying damages sought or awarded against them; to provide for the legal defense of public officers and employees; to provide for reimbursement of public officers and employees for certain legal expenses; and to repeal certain acts and parts of acts. [Emphasis added.]
Plaintiffs contend that the act would exceed the scope of its title were the second sentence of § 7 construed to allow differentiation between the immunity of thé state and the immunity of inferior governmental agencies. We reject this argument. The title of the act only provides that the immunity of all governmental agencies will be made uniform for circumstances involving “the exercise or discharge of a governmental function.” This is accomplished by the first sentence of § 7, which confers uniform statutory immunity on all governmental entities engaged in the exercise or discharge of a governmental function. In *693 enacting the second sentence of § 7, the Legislature ensured that, “by restoring to municipal corporations immunity for governmental functions and making uniform the immunity of all governmental entities for governmental functions, it was not thereby waiving the state’s common-law absolute sovereign immunity for non-govemmental functions . . . Ross, supra at 669 (Levin, J., dissenting in part).
In essence, the Legislature defined the scope of the first sentence of § 7 through the second sentence. Such a limitation cannot be considered a subject diverse in nature that has no necessary connection to the primary object of the act. The limitation in the second sentence is clearly germane, auxiliary, and incidental to the general purpose of the act. Therefore, the act as interpreted does not violate art 4, § 24.
v
STARE DECISIS
We do not lightly overrule precedent. Stare decisis is generally “ ‘the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” Robinson, supra at 463, quoting Hohn v United States, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998). Before we overrule a prior decision, we must be convinced “not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it.” McEvoy v Sault Ste Marie, 136 Mich 172, 178; 98 NW 1006 (1904).
*694 At the same time, we must also remember that stare decisis is a principle of policy, not an inexorable command. Robinson, supra at 464. Stare decisis should not be applied mechanically to prevent this Court from overruling erroneous decisions regarding the meaning of a statute. Id. at 463. In Robinson, supra at 464, we set forth four factors that we consider before overruling a prior decision: (1) whether the earlier case was wrongly decided, (2) whether the decision defies “practical workability,” (3) whether reliance interests would work an undue hardship, and (4) whether changes in the law or facts no longer justify the questioned decision. In considering the reliance interest, we consider “whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce not just readjustments, but practical real-world dislocations.” Id. at 466. Further, we must consider reliance in the context of erroneous statutory interpretation:
[I]t is well to recall in discussing reliance, when dealing with an area of the law that is statutory, . . . that it is to the words of the statute itself that a citizen first looks for guidance in directing his actions. This is the essence of the rule of law: to know in advance what the rules of society are. Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts. In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest. When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court’s misconstruction. The reason for this is that the court in distorting the. statute was engaged in a form of judicial usurpation that runs counter *695 to the bedrock principle of American constitutionalism; i.e., that the lawmaking power is reposed in the people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people’s representatives. Moreover, not only does such a compromising by a court of the citizen’s ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error. [Id. at 467-468.]
Thus, while too rapid a change in the law threatens judicial legitimacy, correcting past rulings that usurp legislative power restores legitimacy. Id. at 472-473 (Corrigan, J., concurring).
Accordingly, we must shoulder our constitutional duty to act within our grant of authority and honor the intent of the Legislature as reflected in the plain and unambiguous language of the statute. In so doing, we rectify Hadfield’s misconstruction of the statutory text.
We are mindful, however, of the effect our decision may have in overruling Hadfield’s interpretation of § 7. As this Court noted in Placek v Sterling Heights, 405 Mich 638, 665; 275 NW2d 511 (1979), quoting Williams, supra at 6, 265-266:
“This Court has overruled prior precedent many times in the past. In each such instance the Court must take into account the total situation confronting it and seek a just and realistic solution of the problems occasioned by the change.”
After taking into account the entire situation confronting the Court, we hold that our decision shall have only prospective application.
Although the general rule is that judicial decisions are given full retroactive effect, Hyde v Univ of Mich *696 igan Bd of Regents, 426 Mich 223, 240; 393 NW2d 847 (1986), a more flexible approach is warranted where injustice might result from full retroactivity. Lindsey v Harper Hosp, 455 Mich 56, 68; 564 NW2d 861 (1997). For example, a holding that overrules settled precedent may properly be limited to prospective application. Id. Moreover, the federal constitution does not preclude state courts from determining whether their own law-changing decisions are applied prospectively or retroactively. Great Northern R Co v Sunburst Oil & Refining Co, 287 US 358, 364-365; 53 S Ct 145; 77 L Ed 360 (1932).
This Court adopted from Linkletter v Walker, 381 US 618; 85 S Ct 1731, 14 L Ed 2d 601 (1965), three factors to be weighed in determining when a decision should not have retroactive application. Those factors are: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. People v Hampton, 384 Mich 669, 674; 187 NW2d 404 (1971). In the civil context, a plurality of this Court noted that Chevron Oil v Huson, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971), recognized an additional threshold question whether the decision clearly established a new principle of law. Riley v Northland Geriatric Center (After Remand), 431 Mich 632, 645-646; 433 NW2d 787 (1988) (Griffin, J.).
We turn first to the threshold question noted in Riley. Although this opinion gives effect to the intent of the Legislature that may be reasonably be inferred from the text of the governing statutory provisions, practically speaking our holding is akin to the announcement of a new rule of law, given the erroneous interpretations set forth in Hadfield and Li. See *697 Riley, supra; Gusler v Fairview Tubular Products, 412 Mich 270, 298; 315 NW2d 388 (1981).
Application of the three-part test leads to the conclusion that prospective application is appropriate here. First, we consider the purpose of the new rule set forth in this opinion: to correct an error in the interpretation of § 7 of the governmental tort liability act. Prospective application would further this purpose. See Riley, supra at 646. Second, there has been extensive reliance on Hadfield’s interpretation of § 7 of the governmental tort liability act. In addition to reliance by the courts, insurance .decisions have undoubtedly been predicated upon this Court’s longstanding interpretation of § 7 under Hadfield-. municipalities have been encouraged to purchase insurance, while homeowners have been discouraged from doing the same. Prospective application acknowledges that rebanee. Third, prospective application minimizes the effect of this decision on the administration of justice. Consideration of recently enacted 2001 PA 222[2] strengthens our determination to limit our holding to prospective appbeation. 2001 PA 222 amends the governmental tort habihty act to provide a remedy for damages or physical injuries caused by a sewage disposal system event.[3] Section 17(2) of the act provides, in pertinent part:
*698 Sections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory.
2001 PA 222 does not contain any language indicating it is meant to apply retroactively, but provides only that it is to take immediate effect. Section 19(1) provides that a claimant is not entitled to compensation under the statute unless the claimant notifies the governmental agency of a claim of damage or physical injury, in writing, within forty-five days after the date the damage or physical injury was or should have been discovered. Only two exceptions to the forty-five-day limit are available: if the claimant notified the contacting agency during the forty-five-day period or if the failure to comply resulted from the contacting agency’s failure to comply with notice requirements. Given the absence of any language indicating retroactive effect, the forty-five-day notice limit, and the presumption that statutes operate prospectively,[4] we conclude that 2001 PA 222 does not apply retroactively.
Thus, if we applied our holding in this case retroactively, the plaintiffs in cases currently pending would *699 not be afforded relief under Hadfield or 2001 PA 222. Rather, they would become a distinct class of litigants denied relief because of an unfortunate circumstance of timing.
Accordingly, this decision will be applied only to cases brought on or after April 2, 2002. In all cases currently pending, the interpretation set forth in Had-field will apply.
VI
TAKING CLAUSE
The parties have addressed whether trespass nuisance is not a tort within the meaning of the governmental immunity statute, but rather an unconstitutional taking of property that violates Const 1963, art 10, § 2. The trial courts in these cases have yet to address the taking claims. Therefore, we decline to discuss those claims at this time.
vn
CONCLUSION
We hold that the first sentence of § 7, by its plain language, applies to both the state and its municipalities, but that the second sentence of § 7 applies only to the state, as defined in the statute. We overrule precedent holding to the contrary. Further, we hold that the statute as interpreted in this opinion does not violate Const 1963, art 4, § 24. After consideration of the effect of this decision on the administration of justice, we hold that this decision is limited to prospective application.
*700 Finally, we observe that it appears from the record that the circuit courts may not have addressed all the elements required under Hadfield for a claim of trespass-nuisance, including causation, when deciding the motions for summary disposition. Therefore, we remand these cases to the circuit courts to reconsider plaintiffs’ motions for summary disposition under Hadfield, including the issue of causation. See Hadfield, supra at 169; Peterman v Dep’t of Natural Resources, 446 Mich 177, 205, n 42; 521 NW2d 499 (1994).
Weaver, Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.

 Because the state is not involved as a party in these cases, we need not explicate fully the meaning of the second sentence of § 7. We agree with Justice Griffin that, at most, the language of the second sentence requires an historical analysis of the state’s sovereign immunity, but we have no occasion to undertake such an analysis here. Therefore, contrary to the dissent’s assertion, we make no determinations regarding common-law exceptions to the state’s governmental immunity.

 2001 PA 222 took effect January 2, 2002.

 Section 16(k) defines a sewage disposal system event:
“Sewage disposal system event” or “event” means the overflow or backup of a sewage disposal system onto real property. An overflow or backup is not a sewage disposal system event if any of the following was a substantial proximate cause of the overflow or backup:
(i) An obstruction in a service lead that was not caused by a governmental agency.
*698 (ü) A connection to the sewage disposal system on the affected property, including, but not limited to, a sump system, building drain, surface drain, gutter, or downspout.
(iii) An act of war, whether the war is declared or undeclared, or an act of terrorism.

 See Frank W Lynch & Co v Flex Technologies, Inc, 463 Mich 678, 583; 624 NW2d 180 (2001); Franks v White Pine Copper Div, 422 Mich 636, 671; 375 NW2d 715 (1985); Hughes v Judges’ Retirement Bd, 407 Mich 75, 85; 282 NW2d 160 (1979).