# Order

**Michigan Supreme Court**
**Lansing, Michigan**

November 5, 2010

140522

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

RODNEY CARTER,
      Defendant-Appellant.

_____/

Marilyn Kelly,
*Chief Justice*

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
*Justices*

SC: 140522
COA: 293861
Wayne CC: 09-004275-FC

On order of the Court, the application for leave to appeal the December 10, 2009 order of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Wayne Circuit Court to determine whether a violation of the mootness doctrine occurred in this case, see *People v Richmond,* 486 Mich 29 (2010), and, if so, to order proper relief. See *id.* and *People v Richmond, rehearing granted in part*, 486 Mich 1041 (2010).

MARKMAN, J. (*concurring*).

I concur with this Court's order remanding to the trial court to determine whether a violation of the mootness doctrine occurred in this case, and, if so, to order the proper relief. In *People v Richmond,* 486 Mich 29, 32 (2010), we held that "the prosecution's voluntary dismissal of the charges rendered its appeal moot . . . ." Here, in proceedings that predated *Richmond,* but which, needless to say, did *not* predate the mootness doctrine, see, e.g., *Anway v Grand Rapids R Co*, 211 Mich 592, 610 (1920), the prosecutor voluntarily dismissed the case after a district court suppression ruling, thereby rendering moot his appeal to the circuit court. As explained below, I see no reason to deviate from the general rule giving *Richmond* "full retroactive effect." *Pohutski v City of Allen Park*, 465 Mich 675, 696 (2002).

First, I am not persuaded by the dissent's assertion that the prosecutorial practice at issue here was "routine before *Richmond.*" If so, it is hard to understand why *Richmond* would have been the first case ever to specifically address this practice, and, indeed, in at least my eleven years on this Court, the first case in which the practice was even presented to this Court. Were this a genuinely commonplace procedure, it does

seem as if the obvious mootness question involved would have at least been engaged at some previous juncture in the appellate system. Moreover, the prosecutor in *Richmond*, representing the largest county in this state, himself has acknowledged that the "dismiss-then-appeal" procedure was employed on only the "rare occasion."

Second, our general principles of retroactivity support the application of *Richmond* in this case. Generally, "judicial decisions are given full retroactive effect." *Pohutski*, 465 Mich at 696. In determining whether a judicial decision should be applied retroactively, this Court considers: "(1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect of retroactivity on the administration of justice." *Id.* The purpose of *Richmond* is to preserve and enforce the long-standing rule that courts do not reach moot questions. Whatever its supposed prevalence pre-*Richmond*, the "dismiss-then-appeal" procedure was never authorized by any judicial decision or court rule of this state, and it clearly violated the mootness doctrine, a well-understood doctrine of justiciability that considerably preceded *Richmond*. Thus, I neither believe that the "dismiss-then-appeal" procedure can fairly be deemed an "old rule," nor that taking the mootness doctrine seriously can be deemed a "new rule."

Further, I do not believe that applying *Richmond* retroactively could in any conceivable way be described as having an adverse effect on the "administration of justice," especially since, as our order on rehearing clarified, *People v Richmond*, 486 Mich 1041 (2010), the prosecutor under the instant circumstances can recharge the defendant. The dissent's concerns in this regard, including its concern about any violation of the Michigan Rules of Professional Conduct, are fully addressed in that order, which was joined by the dissenting justices. To further ensure that there is no adverse impact upon the "administration of justice," this Court has determined to review this matter again at a future administrative conference. In light of these facts, in my view, *refusing* to apply *Richmond* retroactively would have a far worse impact on the "administration of justice," by (a) allowing the prosecutor to evade the mootness doctrine, (b) by allowing a conviction to stand even though the underlying case has already been dismissed, and (c) by undermining the authority and credibility of the precedents of this Court.

In sum, there is no reason to deviate from the general rule giving *Richmond* "full retroactive effect."[1] Because it appears that defendant is entitled to relief under *Richmond* and our principles of retroactivity, I fully concur with the Court's order.

---

[1] The dissent argues that *Richmond* should be given limited retroactive effect, citing *People v Cornell,* 466 Mich 335, 367, in which we accorded limited retroactive effect to cases pending on appeal in which the *Cornell* issue had been preserved. However, as the dissent itself appears to recognize, *Cornell's* standards are inapt because "as *Richmond* involves the application of the mootness doctrine, and the mootness doctrine is jurisdictional, prior preservation is unnecessary." The dissent nevertheless would limit

CORRIGAN, J. (*dissenting*).

I respectfully dissent from the Court's order remanding to the trial court to determine whether a violation of the mootness doctrine occurred in light of *People v Richmond*, 486 Mich 29 (2010). The concurring justice supports giving *Richmond* full retroactive effect, yet the other justices in the majority have not clarified their view when perhaps they should. As a result, I ask whether this Court intends *Richmond* to apply with full retroactive effect or whether it is leaving this determination to the trial court. In any case, I believe that giving *Richmond* full retroactive effect is improper under our retroactivity standards and will cause substantial problems for the effective administration of justice. Accordingly, I support limiting the retroactive effect of *Richmond* to cases pending on appeal when *Richmond* was decided. See *People v Cornell*, 466 Mich 335, 367 (2002) (applying limited retroactivity to those cases pending on appeal in which the issue has been raised and preserved).[2]

After an unfavorable evidentiary ruling resulting in the suppression of evidence, the prosecutor, acting under procedures routine before *Richmond*, moved for dismissal. The record reflects that the district court assured the parties that the issues were preserved under the circumstances. Defense counsel explicitly indicated no objection on the record.[3] In treating any appeal after a voluntary dismissal by the prosecutor as moot, this Court has nullified a routine practice and placed prosecutors in an untenable position. See *Richmond*, 486 Mich at 42-48 (CORRIGAN, J., dissenting). The *Richmond* majority, in its characterization of this practice as a "procedural misstep," *Richmond*, 486 Mich at

*Richmond's* retroactive effect to cases pending on appeal because *Richmond* "created a new rule." For the reasons earlier explained, I respectfully disagree that taking the mootness doctrine seriously, and applying it consistently, can in any way be deemed a "new rule."

[2] As *Richmond* involves the application of the mootness doctrine, and the mootness doctrine is jurisdictional, prior preservation is unnecessary. Nevertheless, because I believe that *Richmond* created a new rule, I support limiting its retroactive effect to cases pending on appeal when *Richmond* was decided.

[3] Specifically, the following exchange took place:

> *Prosecutor*:   Your Honor, if the Court has suppressed the evidence we're unable to proceed in this matter and would be forced to dismiss the case.
>
> *Defense Counsel*:   No objection.
>
> *The Court*:   The matter will be dismissed at this time. And I know that issues relative to appeal are preserved under the circumstances.
>
> *Defense Counsel*:   Thank you very much. [Preliminary Examination Transcript, July 30, 2007, p 18.]

40, evidenced disbelief that any such practice ever existed. But see Gillespie, Michigan Criminal Law and Procedure Practice Deskbook (2d ed, 2010), § 1:36, p 19, and Gillespie, Michigan Criminal Law and Procedure Practice Deskbook (2d ed, 1998), § 1:30, pp 16-17 (acknowledging the use of this practice as part of a stipulated dismissal necessitated by a dispositive evidentiary ruling). Nevertheless, by refusing to grant leave, the majority now forecloses any additional proofs about such a practice and eliminates the possibility of learning whether the rule adopted in *Richmond* is indeed a new rule.

Beyond the disturbing gamesmanship that *Richmond* permits for defendants and judges seeking to insulate a suppression decision from appellate review, if *Richmond* is given full retroactive effect, it likely will encourage numerous motions under MCR 6.500 for relief from judgment from previously convicted defendants seeking to challenge their convictions in circumstances where an appeal followed a prosecutor's dismissal. Such belated challenges, in which the relevant evidence may be missing or may have been destroyed, could result in the wrongful reversal of many otherwise valid convictions. By not taking action to accord *Richmond* limited retroactive effect, the majority effectively invites future problems.

## I. UNDERLYING FACTS

Following the execution of a search warrant for the house where defendant was staying, defendant was charged with possession with intent to deliver over 1,000 grams of cocaine, possession of over 1,000 grams of cocaine, and felony-firearm. At the preliminary examination, the district court granted defendant's motion to suppress the evidence on the basis that the search warrant was deficient. The prosecution then moved to dismiss the case. In granting the motion to dismiss, the district court stated that "issues relative to appeal" were preserved under these circumstances and defense counsel did not object or otherwise disagree in any way with the district court's statement.

The prosecution subsequently obtained review of the district court's evidentiary decision in the circuit court. The circuit court peremptorily reversed the district court's decision and remanded the case to the district court. After rehearing the case, the district court bound defendant over to the circuit court for trial. Defendant pleaded guilty to possession with intent to deliver over 1,000 grams of cocaine and felony-firearm. He then filed an application for leave to appeal with the Court of Appeals, which denied leave. Defendant subsequently filed an application for leave to appeal in this Court, arguing in part that the prosecution waived its right to an appeal by voluntarily dismissing the case against him.

## II. ANALYSIS

Because the relevant proceedings took place before this Court's opinion in *Richmond*, the pertinent question is whether *Richmond* should be given retroactive effect.

The general rule is that judicial decisions are given full retroactive effect. *Pohutski v City of Allen Park*, 465 Mich 675, 695-696 (2002). Nevertheless, "a more flexible approach is warranted where injustice might result from full retroactivity." *Id*. at 696. Three factors to be weighed in determining whether a decision should have retroactive application are: "(1) the purpose of the new rules; (2) the general reliance on the old rule[;] and (3) the effect of retroactive application of the new rule on the administration of justice." *People v Sexton*, 458 Mich. 43, 60-61 (1998), citing *People v Hampton*, 384 Mich 669, 674 (1971). Other than the concurring justice, the majority does not answer the question of what type of retroactive effect is appropriate here. Regardless, I believe that the retroactivity factors weigh in favor of granting *Richmond* limited retroactive effect and against full retroactive application of *Richmond*.

First, the decision in *Richmond*, which applies the mootness doctrine in circumstances of a prosecutor's voluntary dismissal, created a new rule in applying this doctrine to a previously routine practice. The majority in *Richmond* noted that one option available to prosecutors who opt to voluntarily dismiss in this scenario is to simply reinstate charges. *Richmond*, 486 Mich at 36, n 3. However, this option is "problematic because it implies that the prosecution could have simply 'unmooted' the case at any time by reinstating the charges," when, in fact, "MRPC 3.1 provides that '[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous.'" *Richmond*, 486 Mich at 45-46 (CORRIGAN, J., dissenting). Thus, the purpose of the new rule would not be served by full retroactive application because it may place prosecutors who relied on the old rule in the untenable situation of either violating the MRPCs by reinstating charges or permitting a valid conviction to be wiped out.

Second, as the facts of this case show, the bench and bar previously relied on the former practice of voluntary dismissals in the face of an unfavorable evidentiary ruling in criminal cases. See Gillespie, § 1:36, p 19. Here, the district court, in granting the prosecution's motion to dismiss, explicitly noted that the issues were preserved for appeal. Although the rule that courts cannot decide moot questions is longstanding, applying it to the circumstances in *Richmond* established a new rule. Further, the prior practice had general statutory authorization under MCL 770.12(1), which explicitly gives the prosecutor an appeal as of right from a final order. *Richmond*, 486 Mich at 44 (CORRIGAN, J., dissenting). Thus, the significant reliance on the prior practice weighs against the full retroactive application of *Richmond*.

Third, if *Richmond* is given full retroactive effect it will negatively impact the efficient administration of justice. Vacating convictions retroactively in circumstances where *Richmond* applies will place prosecutors at a decided disadvantage. In addition to the already stated issue involving the MRPCs, because of the passage of time,

prosecutors likely will face significant challenges gaining access to the necessary evidence and witnesses. Moreover, if *Richmond* is applied with full retroactive effect, it will place even more of a burden on the already stressed resources of prosecutor's offices and our judiciary, and of course, the wrongful release of convicted criminals endangers our communities. Accordingly, I respectfully dissent from the Court's order remanding to the trial court to determine whether a violation of the mootness doctrine occurred in light of *Richmond*.

YOUNG, J., joins the statement of CORRIGAN, J.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 5, 2010

_____
Clerk

p1102