# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF CHERYL ANN BUOL, by KAREN
ROE, Personal Representative,

        Plaintiff/Counter-Defendant-
        Appellant,

v

HAYMAN COMPANY,

        Defendant/Counter-Plaintiff-
        Appellee.

FOR PUBLICATION
April 17, 2018
9:15 a.m.

No. 336903
Oakland Circuit Court
LC No. 2015-145255-CD

---

Before: BOONSTRA, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

BOONSTRA, P.J.

Plaintiff, the personal representative of the estate of Cheryl Ann Buol, appeals by right the judgment of the trial court entered in favor of defendant in the amount of $104,611.41 plus costs and attorney fees yet to be determined. We vacate and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 1991, Buol applied to work for defendant, an apartment management and commercial real estate company. In her application materials, Buol falsely represented that she had earned a bachelor's degree from the University of Wisconsin. Buol worked for defendant for the next 23 years, ultimately achieving the position of Chief Operating Officer (COO). Buol received numerous promotions, pay raises, and bonuses over the years, including title enhancements and pay raises between 2011 and 2014. Buol left defendant's employ in 2014; the parties dispute whether she was terminated or resigned. Buol filed a complaint alleging age, gender, and religious discrimination and wrongful termination under the Eliot-Larsen civil rights act (ELCRA), MCL 37.2101 *et seq*. Defendant filed a counterclaim alleging that Buol had violated the authentic credentials in education act (ACEA), MCL 390.1601 *et seq*., enacted in 2005, by virtue of her fraudulent claim that she possessed a bachelor's degree. See MCL 390.1604(2). The trial court granted summary disposition in favor of defendant on Buol's ELCRA claims. The trial court also granted summary disposition in favor of defendant on defendant's counterclaim, finding that Buol had violated MCL 390.1604(2). The trial court entered judgment

-1-

in favor of defendant in the amount of the $100,000 statutory minimum damages amount provided by MCL 390.1605.[1]  This appeal followed.[2]

## II.  APPLICABILITY OF THE AUTHENTIC CREDENTIALS IN EDUCATION ACT

Plaintiff[3] argues that the trial court erred by finding that the ACEA applied in this case, because it only applies to the issuance or manufacture of false academic credentials by "diploma mills," and does not apply to the exaggeration of academic credentials that are otherwise legitimate.  We disagree.  Although plaintiff did not preserve this issue below, we nonetheless review it as an issue of law for which all the relevant facts are available.  *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 519; 773 NW2d 758 (2009).[4]  We review de novo questions of statutory interpretation.  *Brackett v Focus Hope, Inc*, 482 Mich 269, 275; 753 NW2d 207 (2008).

The goal of statutory interpretation is to discern the intent of the Legislature.  See *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Michigan*, 492 Mich 503, 515; 821 NW2d 117 (2012).  The first step in this Court's interpretation of a statute is to review the language of the statute itself; if the language is unambiguous, we must give the language its plain and ordinary meaning, without judicial construction.  See *id*.

Plaintiff argues that the ACEA does not apply in this case because she did not use a "false academic credential" as defined by the act.  Plaintiff is correct to the extent that there was no evidence presented that she used a false academic credential.  A "[f]alse academic credential" is defined in the statute as an academic credential that is "issued or manufactured by a person that is not a qualified institution," MCL 390.1602(b).  A "qualified institution" is defined by MCL 390.1602(c).  No party argues that the University of Wisconsin is not a qualified institution.  But plaintiff's argument ignores the plain language of MCL 390.1604, which states:

> (1) An individual shall not knowingly use a false academic credential to obtain employment; to obtain a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation.

---

[1] The judgment also included $4,611.41 in prejudgment interest, and provided for "costs and reasonable attorneys' fees."  The judgment further provided, in accordance with the parties' agreement, that the amount of costs and attorney fees "will be determined by the [trial] Court following a resolution by the Court of Appeals" of this appeal.

[2] Buol passed away after the filing of this appeal.  On January 25, 2018, this Court granted a motion by Buol's estate to substitute parties.  *Buol v Hayman Co*, unpublished order of the Court of Appeals, entered January 25, 2018 (Docket No. 336903).

[3] For simplicity, we will sometimes use "plaintiff" to refer to Buol, as well as to her estate and the estate's personal representative.

[4] Plaintiff first raised this issue in a motion for reconsideration of the trial court's order granting summary disposition in favor of defendant on defendant's counterclaim.  "Where an issue is first presented in a motion for reconsideration, it is not properly preserved."  *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

(2) An individual who does not have an academic credential shall not knowingly use or claim to have that academic credential to obtain employment or a promotion or higher compensation in employment; to obtain admission to a qualified institution; or in connection with any loan, business, trade, profession, or occupation.

While MCL 390.1604(1) addresses the use of a "false academic credential," MCL 390.1604(2) addresses the use of a non-existent "academic credential" to obtain employment or a promotion or higher compensation in employment. An "academic credential" is defined in the statute as "a degree or a diploma, transcript, educational or completion certificate, or similar document that indicates completion of a program of study or instruction or completion of 1 or more courses at an institution of higher education or the grant of an associate, bachelor, master, or doctoral degree," MCL 390.1602(a). The plain, unambiguous language of MCL 390.1604(2) indicates that the Legislature intended to proscribe false claims, in an employment context, that an individual possesses an academic credential that he or she does not possess.

Notwithstanding the plain language of MCL 390.1604(2), plaintiff asserts that this subsection was "intended to mimic the remainder of the statute" by placing "liability on the person knowingly taking advantage of [a] fake diploma." But that is precisely the conduct that is proscribed by MCL 390.1604(1). We must give meaning to every word of a statute and avoid constructions that render statutory language surplusage or nugatory. *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 649; 732 NW2d 116 (2007). Plaintiff's proposed construction is not only contrary to the plain language of the statute but would render MCL 390.1604(2) largely surplusage. We decline to adopt such a construction. And although plaintiff seeks to bolster her argument by reference to the ACEA's legislative history, "the language of the statute is the best source for determining legislative intent." *City of Fraser v Almeda Univ*, 314 Mich App 79, 98; 886 NW2d 730 (2016). As in *Fraser*, we decline to base our interpretation on legislative history; instead, and in light of the unambiguous statutory language "we look only to the language of the statute to determine legislative intent." *Id*. at 97.[5]

In sum, the plain language of MCL 390.1604(2) makes clear that it applies not only to the issuance or manufacture of a false academic credential, but additionally where an individual who does not have an academic credential knowingly uses or claims to have that academic credential to obtain employment or a promotion or higher compensation in employment. The trial court therefore did not err by interpreting MCL 390.1604(2) as applying in this case.

III.  TITLE-OBJECT CLAUSE

---

[5] Further, while this Court in *Fraser* noted, albeit without relying on it, that "the legislative analysis of the statute at issue clearly indicates that the purpose of the [ACEA] is to prevent the existence and use of false academic credentials in the state of Michigan," the only issue before the Court in *Fraser* related to the issuance of a false academic credential in violation of MCL 390.1604(1). We do not read *Fraser* to preclude an additional or corollary statutory purpose as set forth in MCL 390.1604(2).

Plaintiff additionally (and cursorily) argues that interpreting MCL 390.1604(2) to apply to "resume fraud" would violate the Title-Object Clause of the Michigan Constitution, Const 1963, art IV, § 24. We disagree.

The Title-Object Clause provides that "[n]o law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title." *Id*. "[T]he purpose of the [Title-Object] clause is to prevent the Legislature from passing laws not fully understood, to ensure that both the legislators and the public have proper notice of legislative content, and to prevent deceit and subterfuge." *People v Cynar*, 252 Mich App 82, 84; 651 NW2d 136 (2002) (quotation marks and citation marks omitted); see also *People v Bosca*, 310 Mich App 1, 83; 871 NW2d 307 (2015). Our Supreme Court has explained that three kinds of challenges may be brought against statutes on the basis of the Title-Object Clause: "(1) a 'title-body' challenge, (2) a multiple-object challenge, and (3) a change of purpose challenge." *People v Kevorkian*, 447 Mich 436, 453; 527 NW2d 714 (1994), cert den *sub nom Hobbins v Kelley*, 514 US 1083; 115 S Ct 1795; 131 L Ed 2d 723 (1995).

In this case, plaintiff refers us to our analysis in *Bosca* of title-body challenges, thereby presumably indicating that her challenge to MCL 390.1604(2) is of that type. In *Bosca*, this Court stated that in order to succeed on a title-body challenge, a party must demonstrate that the title of the act "does not adequately express its contents . . . such that the body exceeds the scope of the title." *Bosca*, 310 Mich App at 83 (citations and quotation marks omitted). Additionally, the *Bosca* Court stated that while "[t]he title of an act must express the general purpose or object of the act, . . . the title of an act is not required to serve as an index to all of the provisions of the act. Instead, the test is whether the title gives the Legislature and the public fair notice of the challenged provision." *Id*. (citations and quotation marks omitted). "The fair-notice requirement is violated only where the subjects [of the title and body] are so diverse in nature that they have no necessary connection." *Id*. (quotation marks and citations omitted; alteration in original). "[A]ll possible presumptions should be afforded to find constitutionality." *Advisory Opinion re Constitutionality of 1972 Pa 294,* 389 Mich 441, 46; 208 N.W.2d 469 (1973).

The "object" of a law is its general purpose or aim. See *Pohutski v City of Allen Park*, 465 Mich 675, 691; 641 NW2d 219, 230 (2002) (citations omitted). "The 'one object' provision must be construed reasonably, not in so narrow or technical a manner that the legislative intent is frustrated" nor should this Court "invalidate legislation simply because it contains more than one means of attaining its primary object." *Id*. (Citations omitted). An act "may include all matters germane to its object, as well as all provisions that directly relate to, carry out, and implement the principal object" and "may authorize the doing of all things which are in furtherance of the general purpose of the Act" without violating the Title-Object Clause. *Id*. (Citations omitted). Finally, the title of the act need not mention every provision in the body; rather, "[i]t is sufficient that the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental" to the act's general purpose. *Id*. at 692 (citations and internal quotation marks omitted).

Although plaintiff is correct that the ACEA's title does not reference "resume fraud," we conclude that the subject expressed in the title of the act is not so "diverse in nature" from the

subject of the body that the public or the Legislature would be deprived of fair notice. *Bosca*, 310 Mich App at 83. The parties focus on the "short title" of the act, which is the "authentic credentials in education act." MCL 390.1601. The word "authentic" is not defined in the statute, but is commonly defined to mean "[c]onforming to fact and therefore worthy of trust, reliance or belief;" or "[h]aving a claimed and verifiable origin or authorship; not counterfeit or copied." *The American Heritage Dictionary of the English Language* (4th ed). Therefore, the short title of the act puts the public on notice that the purpose of the statute is to ensure the authenticity or integrity of academic credentials.

The more formal title of the ACEA, however, is "AN ACT to prohibit the issuance or manufacture of false academic credentials; and to provide remedies." 2005 PA 100. This verbiage presents a closer constitutional question, in that it does not specifically refer to authenticity of academic credentials, but rather uses language that largely parallels that of MCL 390.1604(1) only. But particularly given the presumption of constitutionality, we do not find the title of the act to be so diverse from its body as to raise a constitutional infirmity. The title of the act expresses the purpose of prohibiting the employment of fraudulent academic credentials. The body of the statute addresses conduct that furthers that general purpose, and that at a minimum is germane, auxiliary, or incidental to that purpose. See MCL 390.1604. MCL 390.1604(1) penalizes the use of false academic credentials from unqualified institutions, which aims to reduce the demand for, and thereby to impede the issuance and manufacture of, such credentials, and which thereby furthers and is germane, auxiliary, or incidental to the statute's general purpose. And MCL 390.1604(2) addresses a related issue by prohibiting fraudulent claims concerning credentials from qualified institutions. Without that provision, an individual apprised of the penalty for using a "diploma mill" degree might simply falsify an academic credential from a qualified institution instead. Indulging in the presumption of constitutionality, as we must, we conclude that the title provides fair notice of the conduct proscribed by the body. See *Bosca*, 310 Mich App at 83 (holding that "the title of an act is not required to serve as an index to all of the provisions of the act. Instead, the test is whether the title gives the Legislature and the public fair notice of the challenged provision."). Plaintiff's challenge under the Title-Object clause is without merit.

IV. DAMAGE

Finally, plaintiff argues that the trial court erred when it found defendant to have been "damaged" by a violation of the ACEA and when it awarded defendant the $100,000 minimum statutory damages. Under MCL 390.1605, "[a] person damaged by a violation of this act may bring a civil action and may recover costs, reasonable attorney fees, and the greater of either the person's actual damages or $100,000.00." MCL 390.1605. We conclude that remand is required for the trial court to determine whether defendant was "a person damaged by a violation of this act."

Defendant argued before the trial court that although it believed it was entitled to damages beginning in 1991 based on plaintiff's fraudulent job application, it was not requesting damages based on that initial fraudulent conduct. Rather, defendant argued that it was damaged by virtue of having made "promotional materials" using plaintiff's biography, and that she had "[risen] to the level of chief operating officer." Defendant therefore maintained that it was entitled to damages based on promotions and salary increases that plaintiff received after 2005,

when the statute was enacted. Plaintiff argued that her "resume fraud" occurred in 1991 (before the ACEA existed), and that defendant could not seek retroactive application of the ACEA. Plaintiff further argued that her promotions and salary increases were based on merit and her job performance, not on her false bachelor's degree claim back in 1991. The circuit court did not discuss either party's argument before awarding judgment in favor of defendant in the amount of $104,611.41.

Defendant argues on appeal that it relied on plaintiff's false 1991 representation in hiring plaintiff and in promoting her and paying her salary and bonuses over the years, and that it therefore was "damaged." Defendant relies on the affidavit of its president to that effect, filed in support of its motion for summary disposition. Defendant has not, however, identified any action by plaintiff—after 1991—by which she "knowingly use[d] or claim[ed] to have [a non-existent] academic credential to obtain . . . a promotion or higher compensation in employment." MCL 390.1604(2). Defendant does not claim, for example, that plaintiff ever applied for those promotions or benefits or claimed her nonexistent credential as a basis for receiving them, nor did defendant present any evidence that her nonexistent degree prompted its decision to promote plaintiff, to increase her compensation, or pay her bonuses. Rather, defendant contends that plaintiff is "strictly liable" for the statutory minimum damages. We do not find these arguments persuasive, at least on the current record. By requiring that a person "knowingly use or claim" an academic credential, MCL 390.1604(2) requires affirmative conduct, as well as scienter; it does not impose strict liability. See *People v Schumacher*, 276 Mich App 165, 168-171 (discussing the difference between a *mens rea* requirement and strict liability). Proof of damages in a tort action generally requires proof of an actual injury or loss. See *Henry v Dow Chemical Co*, 473 Mich 63, 74-75; 701 NW2d 684 (2005).

Although defendant asserts that it would have acted *differently* if it had been aware of plaintiff's resume fraud, the trial court never found that plaintiff "knowingly use[d] or claim[ed]" an academic credential, MCL 390.1604(2), after 1991, or that plaintiff's continued silence about it after 1991 constituted a "knowing[] use or claim," MCL 390.1604(2). It also never evaluated the relative effects of the 1991 resume fraud, of plaintiff's work performance or demonstrated merit, or of other considerations, on defendant's subsequent determinations to promote plaintiff and to continue to make payments (including increased payments) to her (presumably in return for services rendered), of how defendant was harmed by its publication of promotional materials that reflected plaintiff's claimed academic credential, of whether or how defendant's reputation may have been damaged, of whether it suffered a loss of business or income, or indeed whether it suffered any actual loss based on plaintiff's conduct.

Defendant's reliance on *Fraser* on this point is misplaced. In *Fraser*, the plaintiff promoted employees and increased their salaries as a direct result of their having obtained what turned out to be false academic credentials. *Fraser*, 314 Mich App at 83. The plaintiff also provided tuition reimbursement to the employees; this Court noted that, "[o]verall, plaintiff paid a total of $143,848 to the employees for the purchase of Almeda degrees." *Id*. at 84. This Court concluded that "plaintiff demonstrated that it was damaged by defendant's acts because it paid for fraudulent academic credentials *and*, *based upon those credentials*, increased employee salaries." *Id*. at 98 (emphasis added).

As in *Fraser*, plaintiff in the instant case used an academic fraud to obtain employment from defendant. However, unlike in *Fraser*, defendant did not reimburse plaintiff for tuition for her fake degree, nor has the connection between plaintiff's promotions and salary increases and her false claim of an academic credential—in 1991—been established, apart from the bare fact that, had plaintiff's fraud been discovered, she may not have been in a position to have received those benefits (again, presumably in return for services rendered).

We conclude, in light of the lack of any specific findings by the trial court, or any explanation of its reasoning in granting defendant damages under MCL 390.1605, that remand is required for further proceedings on the issue of whether defendant was "a person damaged by a violation of this act." On remand, the trial court should keep in mind the six-year statute of limitations for violations of the ACEA. See *Fraser*, 314 Mich App at 100-101 ("The Act does not contain its own statute of limitations. Therefore, plaintiff's claims are subject to the six-year period of limitations found in MCL 600.5813."). Additionally, the trial court should keep in mind that our Supreme Court has stated that "the 'continuing violations' doctrine is contrary to Michigan law" with regard to the tolling of limitations periods found in Chapter 58 of the Revised Judicature Act of 1961, MCL 600.5801 *et seq.*

Vacated and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

# Court of Appeals, State of Michigan

# ORDER

Mark T. Boonstra
Presiding Judge

Estate of Cheryl Ann Buol v Hayman Company

Jane M. Beckering

Docket No. 336903

LC No. 2015-145255-CD

Amy Ronayne Krause
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

/s/ Mark T. Boonstra

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 17, 2018
Date

Chief Clerk